*Tyler Ireland v State of Michigan, Caro Center*

USDC-WD: 21-cv-

EXHIBIT 1

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

TYLER IRELAND,

    Plaintiff,

-vs-

STATE OF MICHIGAN, CARO CENTER,

    Defendant.

File No. 21- 211 -CD

Hon. JUDGE JAMES S. JAMO

_____/

HURLBURT, TSIROS, & ALLWEIL, P.C.
BY: MANDEL I. ALLWEIL (P34115)
Attorneys for the Plaintiff
821 S. Michigan Avenue
P.O. Box 3237
Saginaw, Michigan 48605
(989) 790-3221

> There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court nor has any such action been previously filed and dismissed after having been assigned to a Judge.

## VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Tyler Ireland, by and through his attorneys the Law Offices of Hurlburt, Tsiros & Allweil P.C., by Mandel I. Allweil, and hereby submits to this Honorable Court his Complaint as follows:

## FACTUAL ALLEGATIONS

1.

Plaintiff, Tyler Ireland, is a resident of the City of Mayville, Michigan, in the County of Tuscola.

2.

Plaintiff is a longtime employee of the State of Michigan (Caro Center), having begun work on or about September 29, 2013.

3.

The Michigan Department of Health and Human Services, (MDHHS), is a principal department of the State of <u>Michigan</u>, headquartered in <u>Lansing</u>, that provides public assistance, child and family <u>welfare</u> services, and oversees health policy and management and upon information and belief, has over 1,000 employees, and is an employer as that term is commonly understood and pursuant to the Elliott Larsen Civil Rights Act. MCL 37.1101 et. seq.

4.

Venue is proper in this Court pursuant to MCL 600.1621, MCL 37.3801 and pursuant to 28 U.S.C. §1331 and the relevant provisions of the Civil Rights Act of 1964, as amended, (Title VII) that gives this Court concurrent jurisdiction of relevant federal claims.

5.

At all relevant times here-to the Plaintiff was employed by the State of Michigan at its Caro Center, and/or had been terminated from his position at the Caro Center, and was attempting to regain his position and/or had been reinstated and working under an offensive, hostile, and intimidating environment.

6.

Plaintiff was originally employed as a Motor Vehicle Operator (MVO), a/k/a (truck driver), and performed that position in an exemplary manner, received good reviews, and was perceived to be a good and competent employee who met or exceeded expectations.

7.

During the time Plaintiff was a MVO it was not known to supervisors, relevant to this claim, that Plaintiff was a homosexual.

8.

In the beginning of May, 2018, Plaintiff started a new position as a Store Keeper at the Defendant's Caro Michigan facility.

2

9.

Prior to October 5, 2018, Plaintiff Ireland and others had heard his supervisors and others make disparaging comments based on sexual orientation.

10.

On or about October 5, 2018, the Plaintiff was on the phone attempting to add his significant other/life partner, a male (Corey), to his medical insurance.

11.

Unbeknownst to the Plaintiff, at the time that he was attempting to add his life partner, a male, to his insurance, the Plaintiff's supervisor, Lisa Sleight came walking from behind him and heard the conversation.

12.

Ms. Sleight was seen reacting to the realization that Mr. Ireland was homosexual, and making the comment, I thought Corey was a girl.

13.

Ms. Sleight, and her supervisor, Mary Jo Drzewcieki-Burger, harbored animus towards people who were gay and they both reacted strongly towards the Plaintiff after the October 5, 2018 phone call.

14.

Prior to Ms. Sleight and Ms. Drzewiecki-Burger becoming aware that the Plaintiff was homosexual, Tyler Ireland was considered to be an excellent worker who was free of any significant defects as an employee and was given good to excellent evaluations.

3

15.

Shortly after Ms. Sleight heard the conversation regarding protecting Plaintiff's life partner, he was subject to a hostile, intimidating and offensive work environment because of his gender, and the fact that as a male, he was attracted to other males.

16.

After Ms. Sleight and Ms. Drzewiecki became aware that Mr. Ireland was homosexual, his work environment became hostile, offensive, and intimidating on a regular basis.

17.

Ms. Sleight's & Ms. Drzewiecki's attitudes, demeanor and actions against Mr. Ireland changed from treating Mr. Ireland like a high performing excellent employee, one who did virtually everything in a satisfactory or exemplary manner, to treating Mr. Ireland like someone they despised, and treated him in an inferior and hostile manner.

18.

Plaintiff was subject to being given purposefully tedious and unnecessary tasks, was subject to different work standards than other similarly situated workers, was given contradictory instructions, was isolated, was called names, and had derogatory objects placed in his work area and had regular meetings held in front of him by the two women, Sleight & Drezewiecki, wherein they would discuss new ways to make the Plaintiff's work-life miserable.

19.

Mr. Ireland reported the discriminatory and illegal conduct of Ms. Sleight and Ms. Drezebicki to various Caro Center Administrators, all to no avail.

20.

Despite being a long-time employee, with an excellent record, on or about March 19, 2019, Mr. Ireland was terminated despite the fact that he was not written up, not counseled, not given any remedial training or assistance, and had not a single bad review prior to termination.

21.

At the Disciplinary meeting where in Mr. Ireland was told he was being fired for a slew of pretextual reasons, without any prior notice, counseling or assistance, Mr. Ireland told the HR Director, Chris Kwasnecki, that he was being terminated solely because he was homosexual.

22.

As a result of the termination being against the terms of the collective bargaining agreement, Mr. Ireland, through his union, filed a grievance.

23.

Mr. Ireland returned to work on or about June 12, 2019, but was again placed under the supervision of the two women who had blatantly discriminated against him and had created the hostile and offensive work environment.

24.

Ms. Sleight started referring to Mr. Ireland as "storekeeper" though she didn't refer to the other storekeeper in that manner and implemented other new procedures to harass and isolate the Plaintiff.

25.

Ms. Sleight has told Mr. Ireland to do one thing and when, after the task was performed, told him to do it in a different way.

5

26.

Ms. Sleight has demanded that breaks be taken to the minute, even if the work flow would suggest that it be otherwise.

27.

When Mr. Ireland walked into the breakroom, on July 24, 2019, at the end of the day, on the chair that he had been sitting for days, and in a group meeting the day before, there was a cucumber-like object taped to a cardboard stand with the clear intent to humiliate and embarrass Mr. Ireland.

28.

Dan Hergenreder, the other storekeeper, reported it to supervision at the direction of the Hospital Director, Rose Laskowski, and pictures were taken by the Safety Department.

29.

Plaintiff had previously reported untoward conduct in the work place to Chris (human resources) and Rose (hospital director) and there has been no prompt remedial measures of any sort as a result of the multiple complaints that were made.

30.

To the contrary, the Defendant has placed the Plaintiff back in the environment that is exceptionally intimidating, hostile, and offensive, with the same supervisors and no prompt remedial measures.

## COUNT I

### VIOLATION OF THE ELLIOTT LARSON CIVIL RIGHTS ACT

31.

Plaintiff reiterates every previous paragraph as if restated word for word.

6

32.

Pursuant to the provisions of the Elliott Larson Civil Rights Act, (ELCRA) MCL 37.2101 et seq; MCL 37.2701, and pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin. See ELCRA MCL 37.2202; *See Also* Title VII, 42 U.S.C., §§ 2000e-2(a)(1).

33.

The respective statutes make it clearly unlawful to discriminate against any individual on the basis of "sex" and an employer who intentionally treats a male employee differently because he is homosexual, as opposed to a woman who would not be terminated because she was involved with a male, discriminates against a person in violation of the ELCRA & Title VII because of "sex."

34.

There was a change in the terms and conditions of the Plaintiff's employment, including but not limited to ultimate termination, once the Defendant's direct supervisors determined and became aware that the Plaintiff was homosexual.

35.

That at all relevant times hereto, the Plaintiff was qualified for the job and did his work in a competent and professional manner and that but for gender, his status as a male homosexual, he would not have been terminated or subjected to other adverse employment actions and/or a hostile and intimidating work environment.

7

36.

Plaintiff has provided information, potential testimony, assisted and participated in an investigation and/or proceeding that is subject to a claim brought pursuant to the Elliott Larson Civil Rights Act. See MCL 37.2101 et seq; MCL 37.2701.

37.

Plaintiff has come forward with germane factual information regarding the allegations that Ms. Sleight and/or Ms. Drzewiecki-Burger, have done the following to the Plaintiff:

A) Retaliated and/or discriminated including termination, against the Plaintiff because of his gender/sexual orientation;

B) Willfully filed retaliatory and untruthful charges against the Plaintiff;

C) Have attempted to intimidate, threaten, coerce, and interfere with the Plaintiff's enjoyment of his life and work because the Plaintiff exercised his right and duty to comply with and/or participate in an Investigation pursuant to the ELCRA wherein he has alleged that he was discriminated against for reasons protected by the ELCRA.

38.

That in each respect the Defendant's unlawful conduct was willful, intentional, and pre-textual.

39.

That Defendant, via its agents, treated Plaintiff in a disparate and inferior manner than comparably situated individuals and that the Defendant's conduct was motivated by the Plaintiff's homosexuality, the fact that the Plaintiff was a male, and these facts were significant factors in the decision to terminate the Plaintiff after years of exemplary service.

8

40.

That after reinstatement, the Plaintiff has continued to suffer from a hostile, intimidating and offensive work environment, an environment where no remedial measures have been exercised, and continues to suffer as a result of the Defendant's discriminatory animus of Plaintiff's supervisors, despite the Plaintiff's requests for remedial measures.

41.

That the acts and omissions of the Defendant, including intentional discrimination and retaliation, as herein set forth, were in violation of the Elliott Larsen Civil Rights Act.

42.

That the Plaintiff's gender/homosexuality was a significant factor, a factor that made a difference, in that the Defendant terminated the Plaintiff and/or allowed other individuals to be retained and/or hired for other positions at Defendant's Caro Center.

43.

Likewise, the Plaintiff's gender/homosexuality and his complaints and participation in allegations against the Defendant, is a significant factor, a factor that made a difference, in that the Defendant, through the Plaintiff's direct chain of command, continue to take adverse actions against the Plaintiff and create a hostile, offensive and intimidating environment.

44.

That as a direct and proximate result of the Defendant's violation of the ELCRA, as herein before set forth, Plaintiff Tyler Ireland has suffered damages including, but not limited to, loss of income, loss of employee benefits including but not limited to pension, savings, and other retirement benefits, emotional distress, exemplary damages, costs, interest and attorney fees as allowed pursuant to the ELCRA.

WHEREFORE THE PLAINTIFF prays for such damages as may be deemed to be just and fair at the time of trial of this cause including reasonable attorney fees, the damages in each instance being an amount over $25,000.00.

## COUNT II

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED

45.

Plaintiff incorporates each previous paragraph as if restated word for word and paragraph by paragraph.

46.

Plaintiff, as a prerequisite to filing this claim, timely filed a charge of discrimination with the EEOC, Michigan Department of Civil Rights.

47.

Plaintiff sought that the EEOC/MDOCR take remedial action against the Defendant.

48.

As a result of the EEOC/MDOCR investigation, the Plaintiff was issued a right to sue letter that is dated, January 13, 2021.

49.

This Court has concurrent jurisdiction of claims brought pursuant to the Title VII, Civil Rights Act of 1964.

50.

Defendant, via its agents acting in the course of their employment, has violated the Civil Rights Act of 1964 by discriminating against the Plaintiff, because he is a male and homosexual,

10

in terms of his compensation, rights, privileges, and conditions of employment and continue to do so as this Complaint is filed.

51.

Defendant violated the Title VII in part, by terminating the Plaintiff and subjecting him to a hostile, offensive, and intimidating work environment because he is a male/homosexual.

52.

That as a direct and proximate result of the Defendant's violation of Title VII, as herein before set forth, Plaintiff, Tyler Ireland, has suffered damages including, but not limited to, loss of income (past and future), loss of employee benefits, including but not limited to, pension, medical, savings, and other retirement benefits, emotional distress, exemplary damages, liquidated and/or punitive damages, costs, interest and attorney fees as allowed by Title VII. See, 29 USC 216 (b).

WHEREFORE, the Plaintiff prays for such damages as may be deemed to be just and fair at the time of trial of this cause including reasonable attorney fees, the damages in each instance being an amount over $25,000.00.

Dated: March 31, 2021         HURLBURT, TSIROS, & ALLWEIL, P.C.

                              BY: /s/ Mandel I. Allweil
                              MANDEL I. ALLWEIL (P34115)
                              Attorneys for Plaintiff
                              821 S. Michigan Avenue
                              P.O. Box 3237
                              Saginaw, Michigan 48605
                              989) 790-3221

11

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

TYLER IRELAND,

        Plaintiff,

-vs-

STATE OF MICHIGAN, CARO CENTER,

        Defendant.

File No. 21-211-CD

Hon. JUDGE JAMES S. JAMO

_____/

HURLBURT, TSIROS, & ALLWEIL, P.C.
BY: MANDEL I. ALLWEIL (P34115)
Attorneys for the Plaintiff
821 S. Michigan Avenue
P.O. Box 3237
Saginaw, Michigan 48605
(989) 790-3221

## DEMAND FOR JURY TRIAL

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.

Dated: March 31, 2021

    HURLBURT, TSIROS & ALLWEIL P.C.

    BY: _____
    MANDEL I. ALLWEIL (P34115)
    Attorney for Plaintiff
    821 S. Michigan Avenue
    P.O. Box 3237
    Saginaw, Michigan 48605
    (989) 790-3221